**Ronald TAYLOR, Appellant
(Defendant below),**

v.

**STATE of Indiana, Appellee
(Plaintiff below).**

No. 981S231.

Supreme Court of Indiana.

Oct. 25, 1982.

Lloyd B. Fisher, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

A jury found the defendant, Ronald Taylor, guilty of murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.) and attempted murder, Ind.Code § 35–42–1–1, *supra,* and Ind.Code § 35–41–5–1 (Burns 1979 Repl.), and found that he was mentally ill at the time of the offenses. Ind.Code § 35–5–2–3(a)(4) (Burns 1981 Supp.). He was sentenced to concurrent terms of thirty years and twenty years for his respective crimes. In this direct appeal, defendant presents the following issues for our review:

1. Whether the jury's verdict was contrary to law in that the evidence established he was insane at the time of the offenses; and

2. Whether Ind.Code § 35–5–2–3 is unconstitutional in that the term "mentally ill," as defined, can be construed as "insanity," a mental state whereby the ability to form "intent" is precluded.

The record reveals that on September 7, 1980, Jeanette Taylor and her son-in-law, Colby Washington, were shot in their residence in Gary, Indiana. Taylor died of her gunshot wounds, while Washington, who had been shot five times, survived. The subsequent police investigation culminated in defendant's arrest and convictions for the crimes at issue.

## I.

Defendant maintains the jury's verdict was contrary to law for the reason that the evidence revealed that he was insane at the time of the offenses. He asserts that inasmuch as the state had the burden of proving his guilt beyond a reasonable doubt, the state also bore the burden of proving beyond a reasonable doubt that he was sane at the time of the offense.

■ As we explained in *Price v. State,* (1980) Ind., 412 N.E.2d 783, effective April 1, 1978, the burden of proving insanity was given to the person who interposes the defense. Acts 1978, P.L. 145, § 9, codified at Ind.Code § 35–41–4–1 (Burns 1979 Repl.). Defendant consequently appeals from a negative judgment; only where the evidence is without conflict and leads inalterably to a conclusion contrary to that reached by the trier of fact will the judgment be disturbed. *Thomas v. State,* (1981) Ind., 420 N.E.2d 1216; *Price v. State, supra.*

■ It is true, as defendant asserts, that his own psychiatrist, as well as both court-appointed psychiatrists, testified that defendant was unable to conform his conduct to the requirements of the law at the time the offenses were committed. Their unanimous conclusion that defendant was insane was based on their common diagnoses that defendant suffered from schizophrenia.

Lay witnesses, however, contradicted the experts' conclusions. Both Colby Washington and Lynette Washington, the defendant's sister, testified that at the time of the shootings defendant was sane, did understand right from wrong, and was able to conform his conduct to the requirements of the law. The record reveals that Lynette Washington based her conclusion on her observations of defendant as an eyewitness to one of the shootings, as well as on her past observations of defendant; Lynette, Colby, defendant, and the decedent had shared the premises wherein the shootings occurred. Colby Washington testified that his opinion was based on his observations of defendant at the time of the shooting and on defendant's statements during the shooting.

The jury was entitled to consider both the lay and expert testimony in assessing defendant's mental capacity at the time of the shooting. *Morris v. State,* (1979) 270 Ind. 245, 384 N.E.2d 1022. Faced with the conflict in the evidence, the jury was free to accept the lay testimony and reject the conclusions of the experts. *Duvall v. State,* (1981) Ind., 415 N.E.2d 718. Inasmuch as there was evidence to support the jury's factual determination, its conclusion must be sustained. *Thomas v. State, supra; Du-*

*vall v. State, supra; Price v. State, supra.*
We find no error here.

## II.

■ Defendant also challenges the validity of Ind.Code § 35–5–2–3, *supra*,[1] maintaining it is unconstitutional on its face and as applied to the facts before us. Defined in the statute are the verdict alternatives available to the jury when a defense of insanity is interposed. The statute reads in pertinent part:

"Sec. 3. (a) In all cases in which the defense of insanity is interposed the jury (or the court if tried by it) shall find whether the defendant is:

"(1) guilty;

(2) not guilty;

(3) not responsible by reason of insanity at the time of the offense; or

(4) guilty but mentally ill at the time of the offense."

Ind.Code § 35–5–2–3, *supra.*

Defendant maintains the statute violates due process, equal protection, and the privileges and immunities guaranteed by our constitutions.

His constitutional claims share a common predicate: the definitions of "insanity" and "mentally ill" are so vague and susceptible to misinterpretation by persons of ordinary intelligence that the verdicts outlined in subsections "(a)(3)" and "(a)(4)" are one and the same. He argues that the vagueness of the statutory terms necessarily results in arbitrary and selective application of the two subsections; concomitantly, he argues that the terms "insanity" and "mentally ill" are so vague and overbroad that it denied him reasonable notice of the charge against him and subjected him to "the whim of the jury." In addition, he maintains that whether a person's mental condition is characterized as "insanity" or "mentally ill," the condition nonetheless precludes formulation of the intent necessary to impose criminal penalties.

The legal definition of "insanity," as incorporated by reference in Ind.Code § 35–5–2–3(b), *supra*, is found at Ind.Code § 35–41–3–6 (Burns 1979 Repl.):

"Sec. 6. (a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the wrongfulness of the conduct or to conform his conduct to the requirements of law.

"(b) 'Mental disease or defect' does not include an abnormality manifested only by repeated unlawful or antisocial conduct."

"Mentally ill," on the other hand, is defined in subsection "c" of Ind.Code § 35–5–2–3, *supra:*

"(c) 'Mentally ill' means having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs the person's ability to function. For the purpose of this section, 'mentally ill' includes having any mental retardation."

We reject the notion that the two definitions are so broad and vague that each describes the same mental condition.

Without question the conditions described by the legislature involve similar behavioral characteristics. A mental disease or defect which manifests itself in the volitional inability to conform one's conduct to the requirements of the law, or in the cognitive inability to appreciate the wrongfulness of particular conduct, constitutes "insanity," as the law recognizes and defines it. *Hill v. State,* (1969) 252 Ind. 601, 251 N.E.2d 429; *People v. Sorna,* (1979) 88 Mich.App. 351, 276 N.W.2d 892. To that extent, of course, the terms "mentally ill" and "insanity" can be said to overlap.

■ This Court has long recognized, however, that the existence of a mental disease or deficiency does not *ipso facto* render a defendant legally insane. *See, e.g., Hill v. State, supra; see also, People v. Ramsey,* (1979) 89 Mich.App. 468, 280 N.W.2d 565;

---

1. The statute was repealed effective September 1, 1982, by Acts 1981, P.L. 298 § 10(c). The law was re-enacted substantially verbatim and is presently codified at Ind.Code § 35–36–2–1 *et seq.* (Burns 1982 Supp.). Acts 1981, P.L. 298 § 5.

*State v. Stacy,* (1980) Tenn., 601 S.W.2d 696. For purposes of criminal law, the focal point always has been whether any particular defendant acted with the intent and culpability for which the imposition of criminal penalties was justified. *Id.* That focus is perpetuated in the statutory definitions and verdict alternatives at issue.

It is recognized in Ind.Code § 35–5–2–3, *supra,* that while a particular defendant may have been "mentally ill" at the time he committed an offense, the fact that his thoughts, feelings, or behavior were affected or his functions impaired does not automatically negate the *mens rea* necessary to the offense. If, on the other hand, defendant was suffering from "insanity" as defined in Ind.Code § 35–41–3–6, *supra,* then he has established his affirmative defense and the lack of moral culpability which otherwise would justify the imposition of criminal liability.

The distinction is unequivocally drawn. We reject the contention that defendant somehow was denied notice of the charge against him by virtue of the legislature's definitions of "insanity" and "mentally ill." The elements of the crimes charged—murder and attempted murder—were unequivocally alleged in the information, as is necessary to satisfy the due process notice requirement. *Ind. Const.* art 1, §§ 12 and 13; *Blackburn v. State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Boyd v. State,* (1979) Ind.App., 396 N.E.2d 920. The elements remained at issue; defendant was apprised of the role which insanity or mental illness might play in the proceedings by virtue of Ind.Code § 35–5–2–3, *supra.*

Nor do we agree with defendant that the definitions employed by the legislature are so vague and overlapping that the trier of fact is bestowed with unlimited discretion in the application of the terms. Consequently, we reject defendant's equal protection and privileges and immunities arguments that the fact-finder's application of the definitions and alternative verdicts will result in an irrational classification between defendants found guilty but mentally ill and those found not responsible by reason of insanity. To be sure, the application of the terms to any particular defendant and factual context may be difficult. The same was true, of course, of the question which confronted juries when, prior to the existence of the "guilty but mentally ill" verdict, jurors were faced with only two alternatives: sane or insane.

Our legislature has now provided jurors with an alternative verdict, an intermediate ground, which embodies the circumstance long recognized in the law—the defendant who suffers from a mental illness or deficiency yet remains capable of appreciating right from wrong and conforming his conduct to the requirements of the law. *Hill v. State, supra.*

The "guilty but mentally ill" verdict serves the state's interest in securing convictions justly obtained and in obtaining treatment for those convicted defendants who suffer mental illness. The classification is thus one which is reasonably related to a legislative purpose, as is necessary to withstand an equal protection attack. *U.S. Const.* amend XIV; *Ind. Const.* art. 1, § 23; see *Steup v. Indiana Housing Finance Authority,* (1980) Ind., 402 N.E.2d 1215; *Martin v. State,* (1974) 262 Ind. 232, 317 N.E.2d 430; *O'Brien v. State,* (1981) Ind.App., 422 N.E.2d 1266. Nor can it be said that the statutory definitions and alternative verdicts are not equally available to persons similarly situated; the application of the classifications rests on the evidence regarding any particular defendant's mental condition. There is no patent inequity to support an equal protection or privileges and immunities claim. *Id.*

The appellate courts of Michigan, one of the few other jurisdictions which has established the "guilty but mentally ill" verdict, have also rejected constitutional arguments such as those put before us. *People v. McLeod,* (1980) 407 Mich. 632, 288 N.W.2d 909; *People v. Rone,* (1981) 109 Mich.App. 702, 311 N.W.2d 835; *People v. Ramsey, supra; People v. Sorna, supra.* In the latter case, the Court of Appeals noted that the classification "guilty but mentally ill" represented the legislature's attempt to

provide a solution " 'in a practical and troublesome area.' " *Id.,* 88 Mich.App. at 360, 276 N.E.2d at 896, quoting *McGinnis v. Royster,* (1973) 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282, 289. The court continued:

> "The Legislature, in formulating M.C.L. § 768.36; M.S.A. § 28.1059, has established an intermediate category to deal with situations where a defendant's mental illness does not deprive him of substantial capacity sufficient to satisfy the insanity test but does warrant treatment in addition to incarceration. The fact that these distinctions may not appear clearcut does not warrant a finding of no rational basis to make them. As the United States Supreme Court has observed:
>
>> " 'The problems of government are practical ones and may justify, if they do not require, rough accommodations —illogical, it may be, and unscientific.' *McGinnis v. Royster, supra,* 410 U.S. at 270, 93 S.Ct. at 1059."
>
> *People v. Sorna, supra,* 88 Mich.App. at 360–1, 276 N.W.2d at 896.

Like the court in *Sorna,* we have expressed our recognition that the question whether a particular defendant is not responsible by reason of insanity or guilty but mentally ill may not always be easily resolved. That fact, of course, does not render the legislature's definitions and verdicts invalid, for difficult factual questions may arise in any area of the law. Our legislature's attempt to ameliorate the problems which have plagued this troublesome area of law is commendable; in rejecting defendant's constitutional challenges to Ind.Code § 35–5–2–3, *supra,* we emphasize that courts and lawyers alike should strive to insure that jurors, in assessing the delicate factual question which confronts them, are equipped with an understanding of the terms "insanity" and "mentally ill," as well as the crucial distinction between the legislatively-defined concepts.

Inasmuch as we reject defendant's contention that Ind.Code § 35–5–2–3, *supra,* is unconstitutional on its face, we turn to his corollary assertion that the statute is unconstitutional as applied to the facts of his case. His argument is based on the claim that the jury was inadequately instructed on the terms of insanity, mentally ill, and the state's burden to prove he acted with the intent to murder. He asserts the jury "acted without any criteria" in rendering its verdict that he was "guilty, but mentally ill."

The record, however, reveals otherwise. The jury was informed via the court's final instructions numbered 1 and 2 that the state had the burden of proving defendant committed all the elements of the offense charged, notwithstanding defendant's interposition of an insanity defense. Explained in instructions 3 and 6 were the elements of murder and attempted murder. Instruction 8 included a verbatim recitation of the legislature's definition of insanity and informed the jury that the defendant bore the burden of proving the existence of the defense by a preponderance of the evidence. Instruction 9 was composed of a verbatim recitation of the legislature's definition of the term "mentally ill." In both instructions 8 and 10, the court explained the legislature's definition of the phrase "mental disease or defect." And in instruction 10 and 11, the court instructed the jury that it should consider both expert and lay testimony concerning defendant's mental state and condition and arrive at its own conclusion, attaching whatever weight it deemed proper to any particular testimony.

Defendant has not explained the manner in which these instructions were deficient, nor has he related the manner in which the instructions deprived him of his constitutional rights. The instructions given were consistent with the governing statutory and case law; the matters conveyed therein fully embodied the law the jury was required to follow in reaching its verdict. We fail to perceive the manner in which Ind.Code § 35–5–2–3, *supra,* is unconstitutional as it was applied to the facts of this case. We find no error here.

For all the foregoing reasons, there was no trial court error and its judgment should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.